Yvonne M. Fraser, Esq. (SBN #272946)
THE LAW OFFICE OF YVONNE M. FRASER
2100 Palomar Airport Road, Suite 214-38A
Carlsbad, CA 92011
T: (619) 368-2180; F: (760) 888-1406
Email: yvonne@yfraserlaw.com

Attorney for Plaintiffs,
Jonathon E. Stone et al

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHON E. STONE, as an individual and as Personal Representative and successor-in-interest of the Estate of Sarah Kaye Stone, Decedent; ALLISON STONE, a minor and daughter of decedent by and through her natural guardian and father, Jonathon E. Stone; ALYSSA STONE, a minor and daughter of decedent by and through her natural guardian and father, Jonathon E. Stone; MADELYNN STONE, a minor and daughter of decedent by and through her natural guardian and father, Jonathon E. Stone; and JACKSON E. STONE, a minor and daughter of decedent by and through his natural guardian and father, Jonathon E. Stone; <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; and DOES 1 through 30, inclusive, <br><br> Defendant(s). | Case No.: **'20CV0713 L    WVG** <br><br> **COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH, PROFESSIONAL NEGLIGENCE (BASED UPON MEDICAL MALPRACTICE); LOSS OF CONSORTIUM; AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br><br> Unlimited Civil Complaint <br><br> DEMAND FOR BENCH TRIAL |

1

COMES NOW 1) Jonathon E. Stone, individually and as successor-in-interest to the Estate of Sarah Kay Stone (his lawful wife), deceased; 2) Sarah Kay Stone, a deceased individual by and through her successor-in-interest and lawful husband, Jonathon E. Stone; and the natural, biological and/or court-appointed children of Sarah Kay Stone and Jonathon E. Stone: 3) Allyssa Stone, 4) Allison Stone, 5) Madelynn Stone, and 6) Jackson E. Stone, by and through their natural guardian and father, Jonathon E. Stone, for causes of action against the Defendants, and each of them, and herein alleges, based upon information and belief:

**JURISDICTION, VENUE AND STATUTE OF LIMITATIONS**

1. This action is brought pursuant to the Federal Torts Claim Act (FTCA), 28 U.S.C. §§1346(b), 2671 et seq., against the Unites States of America, which vests exclusive jurisdiction of Federal Torts Claims litigation in the Federal District Court.

2. Venue for this action is appropriately in this District pursuant to 28 U.S.C. §1402, because the acts or omissions giving rise to this complaint occurred in the County of San Diego, California.

3. The events giving rise to the Plaintiffs' causes of action occurred and/or were overseen by the Naval Branch Medical Clinic, located at 8808 Balboa Avenue, San Diego, California, 92123, and Balboa Naval Medical Center, located at 34800 Bob Wilson Drive, San Diego, California, 92134, between the time period of September 2015 through November 01, 2016.

4. At all relevant times mentioned herein, Raymond E. Collier, PA-C, based upon information and belief, was a physician assistant duly licensed to practice medicine in the State of California, pursuant to the scope of practice of a physician assistant as promulgated and regulated under the laws of the State of California.

5. Plaintiffs allege, based upon information and belief, at all relevant times mentioned herein, Raymond E. Collier PA-C, was a duly authorized agent and employee of the Naval Branch Medical Clinic; an office and agent of the Defendant, the United States of America, located at 8808 Balboa Avenue, San Diego, California, 92123, and was acting within the scope of his employment and agency.

6. On 11/01/2018, Plaintiffs submitted their claim for personal injuries, wrongful death, and damages in the amount of 24 million dollars to the Office of the Judge Advocate General, Torts Claim Unit Norfolk, 9620 Maryland Avenue, Suite #205, Norfolk, Virginia,, which agency rejected the claim by letter postmarked on October 25, 2019.

7. Plaintiffs' administrative claim was submitted timely, within the two year statute of limitations, pursuant to Sarah Stone's death on November 01, 2016, following her receipt of continuous and ongoing medical care under the Naval Health Care Services and their subsequent referral of Sarah's health care to UCSD Medical Center, for ongoing care pursuant to the Naval Health Care Services direction for treatment.

## THE PARTIES

8. Plaintiffs incorporate paragraphs 1 through 7 by reference, as if fully set forth herein. As to the claims asserted herein against the Defendants:

9. At all relevant times mentioned herein. Sarah Kay Stone (decedent) was a resident of San Diego, California, and was the Dependent of an active duty United States Naval personnel.

10. Sarah Kay Stone, decedent, was born on 10/17/1987 and passed away at the age of 29 on November 01, 2016 at 11:15 a.m. with cause of death being metastatic appendiceal cancer.

11. At all relevant times mentioned herein. Jonathon E. Stone ("Mr. Stone" or "Plaintiff") was an active member of the United States Navy, was the spouse of Sarah Kay Stone, decedent, and was a resident of San Diego, California.

12. At all relevant times mentioned herein, Sarah Kay Stone (decedent) and Plaintiff, Jonathon E. Stone were lawfully married and remained so until the death of Sarah Kay Stone on November 01, 2016.

13. Plaintiff, Jonathon E. Stone, is the Personal Representative and successor-in-interest of the Estate of Sarah Kay Stone, deceased.

14. At all relevant times mentioned herein, Sarah Kay Stone and Jonathon E. Stone had four natural, biological, and/or legal children: Alyssa Stone, Allison Stone, Madelynn Stone, and Jackson Stone, each ranging in age from three to nine years old.

15. Jackson E. Stone, a minor boy, was formally and legally adopted by Plaintiffs, Mr. and Mrs. Stone, shortly following his birth and subsequent to their court-appointed role as Jackson E. Stone's foster parents from his age of two days old. The three other minor children, Alyssa Stone, Allison Stone, and Madelynn Stone are the natural and biological children of Plaintiffs, Jonathon E. Stone and Sarah Kay Stone.

16. Each of the minors named in this action are the legally recognized child(ren) of Plaintiff, Jonathon E. Stone and Sarah Kay Stone, decedent, and each of the children currently reside with their father and natural guardian, Jonathon E. Stone (Plaintiff).

17. The following are the survivors and beneficiaries of a claim for wrongful death of Sarah Kay Stone:

   i. Jonathon E. Stone, spouse;
   ii. Madelynn Stone, date of birth: 10/07/2009, minor daughter;
   iii. Allison Stone, date of birth: 06/27/2007, minor daughter;
   iv. Alyssa Stone, date of birth: 06/27/2007, minor daughter;
   v. Jackson E. Stone, date of birth: 04/25/2013, minor son.

18. Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned herein, Defendant, United States of America, by and through its agent, Naval Branch Health Clinic, San Diego, Balboa Naval Medical Center, San Diego, UCSD Medical Center, San Diego, and Does 1 through 30, and each of them, were and/or now are government entities, corporations, associations, private organizations, medical groups consisting of partners, partnerships, professional corporations, and/or other entities, licensed and/or authorized to own, manage, and control a general acute and family health care facility in San Diego County, California.

19. Plaintiffs, based upon information and belief, allege that Raymond E. Collier, PA-C, at all times relevant herein, was a physician assistant licensed under the laws of the State of California.

20. At all times relevant herein, Raymond E. Collier, PA-C, was an active military personnel member, employee, agent, and/or servant of the Defendant, United States of America, during

which time his occupation consisted of providing medical services to navy personnel and their families at the Naval Branch Health Clinic, located at 8808 Balboa Avenue, San Diego, California, 92123.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

21. Plaintiffs incorporate paragraphs 1 through 20 by reference, as if fully set forth herein. Plaintiffs, based upon their information and belief, allege the following:

22. Sarah Kay Stone (hereinafter "Decedent"), age 27 years old, sought medical care at the Naval Branch Medical Clinic located at 8808 Balboa Avenue, San Diego, California 92123, on or about October 2015, for moderate to severe abdominal pain and difficulty eating, shortly after her husband, Plaintiff Jonathon Stone (E8, United States Navy), was deployed for active duty to the middle east. Mrs. Stone was not having any abdominal pain, discomfort, and/or bloating at the time that Plaintiff, Jonathon Stone initially deployed to the Middle East.

23. Decedent was seen by a registered nurse (name currently unknown) and physician assistant, Raymond E. Collier, PA-C, for the evaluation and medical management of her moderate to severe abdominal pain.

24. Sarah Stone, at all times, was under the impression that Raymond E. Collier was a fully trained medical physician and Plaintiffs maintain that she was unaware that Collier PA-C was a physician assistant.

25. Decedent, Sarah Kay Stone, informed both the nursing clinical staff and Raymond E. Collier, PA-C, of her complete medical history, including but not limited to, her family's history of cancer, which included her mother's recent return of breast cancer and of her grandfather's early death due to abdominal cancer.

26. Sarah's personal medical history was unremarkable and was available in its entirety to Collier, PA-C, via Mrs. Stone's electronic medical records which were in the custody and control, and maintained by the United States Naval Health Services, including the Naval Branch Medical Clinic.

27. Based upon information and belief, Plaintiffs allege that the nurse informed the Decedent upon hearing the history of Mrs. Stone's medical complaints (re: severe abdominal pain and difficulty eating), that she was likely suffering from common heartburn.

28. PA-C Collier concurred with the nurse and did <u>not</u> perform any type of physical examination of the Decedent, instead he simply prescribed her Nexium for heartburn and stated that her symptoms should resolve within the week. Additionally, Collier PA-C winked suggestively at Mrs. Stone upon the conclusion of the medical visit.

29. The Decedent's abdominal pain continued to worsen during the week following her medical appointment with Collier PA-C, and her abdominal area began to bloat. Sarah Stone contacted the Naval Branch Medical Clinic and informed the clinical staff that that her symptoms were becoming increasingly worse and that the prescribed Nexium was not having any effect on her abdominal pain nor providing her any relief.

30. The Decedent was instructed by the Naval Branch Medical Clinic to return to the Clinic and have blood labs drawn. Decedent timely returned to the clinic and had the necessary laboratory tests performed.

31. Decedent was told by the clinical staff that the Clinic [staff] would contact her within a week and inform her of the blood laboratory test results.

32. Decedent, herself, contacted the Clinic via telephone following a one-week period of time because the Clinic had failed to contact her with the laboratory test results and Decedent's abdominal pain was worsening accompanied by increased bloating, and she was experiencing increasing difficulty eating as well as severe malaise and fatigue.

33. Decedent was informed by the Clinical staff that she likely had an abdominal infection and she was required to return to the Clinic to pick up two different types of antibiotics which were being prescribed to her, by Collier PA-C, to treat the infection, H. Pylori. There was not any mention by the PA-C or the clinical staff of any adverse findings from Sarah's blood laboratory test results.

34. Mrs. Stone timely picked up the antibiotics and took the prescribed antibiotics diligently pursuant to the prescription instructions without experiencing any relief to her abdominal pain and discomfort.

35. Sarah Stone, Decedent, telephoned the Naval Branch Medical Clinic approximately 7 to 10 days, after she had began taking the prescribed antibiotics, to inform the clinic that the antibiotics did not seem to be helping and that her abdominal pain and discomfort were worsening instead of decreasing. She also informed the clinic that she was having immense trouble consuming food and eating causing her to lose further weight while at the same time she was continuing to bloat in her abdominal area which was adding noticeable girth to her normal waistline.

36. The clinical staff, in response to Sarah Stone's telephone call and complaints, proceeded to state to the decedent that she had not "given the antibiotics enough time to work", that "it takes the antibiotics 5 to 6 weeks to work in providing relief" [paraphrase], and that she was "calling the naval clinic way too early regarding her complaints because the antibiotics had not had the required time to produce any effect" [paraphrase].

37. Sarah Stone, decedent, then attempted to wait the five weeks of time for the antibiotics to work, pursuant to the naval clinic's clinical staff response to her telephone call and her complaints of not receiving any abdominal pain relief or benefit from the prescribed antibiotics.

38. On the same day that the five week time period was reached, Sarah Stone, decedent, once again called the Naval Branch Medical Clinic and reiterated the same message as she had four weeks previous, re: increasing abdominal pain, overall weight loss, increasing abdominal girth, fatigue, and general malaise. She was informed and instructed by the Naval Branch Medical Clinic to come into the clinic again for another appointment so she could once again be seen and medically evaluated by the Clinic's medical staff for her ongoing medical complaints.

39. Sarah Stone, the decedent, went to her scheduled appointment on or about late November/early December 2015. She was once again seen by Richard Collier, PA-C.

40. Collier, PA-C, performed, for the <u>first time</u>, a physical examination on Mrs. Stone. This was the first time Collier PA-C, or any other clinical staff had performed any type of physical medical examination, other than taking Mrs. Stone's vital signs, on Sarah's body.

41. Collier, PA-C, had Sarah Stone lie down on an examination table and he proceeded to physically examine her abdominal area with his hands, pursuant to a regular medical examination that a person would expect for complaints of severe abdominal pain.

42. Collier, PA-C, at this medical visit, proceeded to make the ensuing statements [paraphrased] to Mrs. Stone during his physical examination of Sarah at the Naval Branch Medical Clinic. These comments are quoted to the best ability and recollection of Mrs. Stone from her visit at the Naval Branch Medical Clinic.

43. Collier PA-C inquired of Mrs. Stone, decedent, during his physical examination of her abdomen as to whether or not she was "sure that this is not just your body changing shape with age?" Sarah Stone, decedent, responded emphatically that "this is not my body changing shape with age and I know something is physically wrong with me." It is important to note that Mrs. Stone was approximately 27 years of age at the time of this medical visit and during the entirety of time that she had been complaining of abdominal pain which perpetuated her medical visits to the Naval Branch Medical Clinic for medical treatment.

44. Collier PA-C, following Mrs. Stone's comments, responded **<u>sternly</u>** to Sarah Stone with the following comment: "If you did not have a husband who was deployed to the middle east and four children at home...I would have had you admitted to the hospital based upon your labs which showed dehydration and malnutrition." The comment by Collier PA-C was stated with vehemence, lack of empathy and/or caring, and heavily implied that Mrs. Stone's physical condition was a result of her own conduct and/or behavior. Again, it is important to note that the Naval Branch Medical Clinic did not attempt to contact Sarah Stone about her blood lab results but instead she had to contact them after waiting one week following the lab draws to check the status of her blood lab results. The Clinic simply stated that she may have an abdominal infection, H. Pylori, and Mrs. Stone was to pick up two different types of antibiotics from the Naval Branch Medical Clinic and follow the instructions for taking the antibiotics

pursuant to the Naval Branch Medical Clinic's printed instructions on the antibiotics. There was never any previous mention to Mrs. Stone that her blood lab results showed dehydration, malnutrition, or any other abnormal finding apart from the H. Pylori infection.

45. . Collier, PA-C, then proceeded to tell Mrs. Stone that he was going to recommend a "psych referral and/or consult" for her based upon her complaints and statements.

46. Mrs. Stone, upon hearing this, broke down in tears, and emphatically **pleaded** with Collier PA-C to order a scan or other tests to find out what was going on with her medically. Collier, PA-C, reluctantly (per Mrs. Stone) agreed to order an abdominal ultrasound of Mrs. Stone's abdomen. This ultrasound order for imaging was ordered as routine and she was told that it may take three to four weeks for the scheduling and performance of the abdominal ultrasound.

47. The routine ultrasound had not been performed prior to the docking of Mr. Jonathon Stone in San Diego from his Middle East deployment. Mr. Stone, Plaintiff, returned from his Middle East deployment on or about December 24, 2015.

48. Plaintiff, Jonathon E. Stone barely recognized his wife, Sarah Stone, at the naval ship's dock, due to Mrs. Stone's extreme weight loss combined with a pronounced weight gain in her abdominal region, during his deployment. Sarah Kay Stone appeared to be nine months pregnant pursuant to her physical body shape and extensive abdominal bloating.

49. The Stones, following Mr. Stone's arrival, proceeded to return to their base housing unit apart from a brief stop for groceries at a local grocery store during which the cashier at the grocery store inquired of Mrs. Stone as to when she was "due" on the assumption that Mrs. Stone was pregnant as the cashier inferred based upon Mrs. Stone's extensive abdominal bloating.

50. During their first night home together, the couple spent the evening playing with their children. Mr. Stone perceived that Sarah Stone was in pain and was trying to mask the pain around his presence. He further described Mrs. Stone's physical condition as wheezing, appearing to be in severe pain and discomfort which he noted during her sleep on his first night home from deployment.

51. The following morning, Mr. Stone announced to his wife, Sarah Stone, that he was taking her to be seen and evaluated by Balboa Medical Center pursuant to her appearance and the pain/discomfort that he perceived her to be in during his brief time back from deployment.

52. A bedside ultrasound was performed on Mrs. Stone immediately upon her arrival at Balboa Medical Center Emergency room, and Mrs. Stone was hydrated with intravenous fluids during her time in the emergency department of Balboa Medical Center.

53. Mr. Stone described the following scene from Balboa Medical Center which took place following the performance of the bedside ultrasound. He recalls that "multiple high-ranking physicians grouped around Sarah Stone's bedside looking very grim and serious."

54. The Balboa physicians attending to Mrs. Stone, proceeded to explain that the bedside ultrasound identified two masses [tumors] on each of Sarah Stone's ovaries with one mass appearing to be the size of a grapefruit and that surgical removal would be necessary.

55. Medical staff continued to hydrate Mrs. Stone prior to her discharge from Balboa Medical Center with instructions to call a specific surgeon the following morning to schedule surgery for the removal of the masses.

56. The surgeon, however, contacted the Stones prior to the following morning and arranged immediate surgery for the following day (to the best of Mr. Stone's recollection) for the removal of the identified masses.

57. Sarah had the surgery immediately, or about December 27, 2015, to remove the two ovarian masses. The surgeon, post-operatively, explained to the Stones that he surgically removed ten plus pounds of mucus from Sarah's abdomen during the surgery. The surgeon's working diagnosis, post-operatively, was appendiceal cancer for which Sarah was referred to UCSD Medical Center for further evaluation and medical treatment.

58. Plaintiff, Sarah Stone immediately began receiving full medical care and treatment from UCSD Medical Center, in conjunction with the medical care and treatment plan authorized and/or formulated by the Defendants, the United States of America, up to the time of Sarah Kay Stone's death, on November 01, 2016.

59. Sarah Stone was supposed to undergo a specific surgical procedure known as HITEP that would likely be curative of her appendiceal cancer or at the very least put her in a state of remission for years.

60. UCSD arranged for Sarah Stone to have one final scan of her bones prior to the surgical procedure which showed that the appendiceal cancer had metastasized to her bones thereby disqualifying Mrs. Stone as a candidate for the procedure.

61. UCSD Medical Center was only able to treat Sarah with chemotherapy, radiation, and other life-prolonging and/or symptom relief treatments. They were unable to administer medical treatments that could otherwise be curative or that could potentially offer a remission status because of the delayed diagnosis which resulted in bone metastasis. Historically, 85% of persons undergoing a successful HITEP surgery experience remission or a curative solution from appendiceal cancer despite common metastasis to the surrounding abdominal organs.

62. Plaintiffs contend that but for the Defendants' delayed diagnosis which occurred as a result of Defendants' care and medical mismanagement, the appendiceal cancer metastasized to Sarah's bones thereby disqualifying her as a candidate for the HITEP surgery and depriving her of a loss of chance for survival.

## FIRST CAUSE OF ACTION: PROFESSIONAL NEGLIGENCE
### [Against All Defendants]

63. Plaintiffs incorporate paragraphs 1 through 62 by reference, as if fully set forth herein.

64. Sarah Stone, Plaintiff and Decedent, by and through her survivor and successor-in-interest, Jonathon E. Stone (Decedent's husband), brings an action for professional negligence.

65. Jonathon E. Stone is and was at all relevant times, described herein, the legal husband of Sarah Kay Stone.

66. This survivor cause of action for professional negligence refers specifically to any and all health care that was delivered, omitted, and/or received by Sarah Stone from the Naval Branch Medical Clinic, during the time period commencing with Mrs. Stone's initial visit to the Naval Branch Medical Clinic, on or about October, 2015 and up to the time of Mrs. Stone's subsequent death, on or about November 01, 2016.

67. Plaintiff and Decedent, Sarah Kay Stone, presented to the Defendants' medical facilities, operated by Defendant United States of America and came under the care and treatment of Raymond E. Collier, PA-C, and others, who were likewise hospital/clinic staff members and employees of Defendant, United States of America. While under such care and treatment, Plaintiff and Decedent, Sarah Kay Stone's illness was misdiagnosed, resulting in her subsequent death.

68. Plaintiff and Decedent, Sarah Kay Stone, and Defendant, United States of America, its agents, employees, and servants, were the participating parties in a medical provider/patient relationship which inherently imposes legal duties and obligations on the participants by virtue of the medical provider/patient fiduciary relationship.

69. Defendants were under a recognized legal obligation to provide medical care to Sarah Kay Stone, in accordance with the recognized community standard of medical care, treatment, and diagnosis, during the time that the Defendants were in a medical provider/patient relationship with Sarah Kay Stone.

70. Defendants were responsible for providing meaningful medical care, treatment, and diagnosis to the Plaintiff and Decedent, Sarah Kay Stone, consistent with the community standard of medical care that would be provided in similar situations as that presented by Plaintiff, Sarah Kay Stone.

71. Defendants' employees, medical facilities, and agents, in so treating Plaintiff and Decedent, Sarah Kay Stone, deviated from the standard of care, recognized and approved by both family and urgent care medical practices, by failing to diagnose Sarah Kay Stone's true condition and by failing to timely order and perform the necessary diagnostic tests which were required in order for the Defendants to formulate and/or rule out a proper medical diagnosis, thereby ensuring that the correct medical treatment for Mrs. Stone's condition be provided and timely undertaken.

72. Specifically, Plaintiffs allege that the Defendants negligent acts include, but are not limited to, the following:

    a. Failure to perform diagnostic radiological imaging of Sarah's abdomen;

b. Failure to perform a diagnostic ultrasound of Sarah's abdomen;

c. Failure to rule out the most common medical causes of abdominal pain in an otherwise young, healthy 27 year old female, of which being 1) ectopic pregnancy; 2) ovarian cyst; 3) appendicitis; and 4) gallbladder disease whereas each would require an abdominal ultrasound to be performed and thereby would have detected the ovarian masses and the 10+ pounds of fluidic mucous contained in Sarah's abdomen which was the causing Sarah's extreme bloating;

d. Failure to investigate the laboratory tests which showed malnutrition and dehydration by initiating and performing further diagnostic tests which would explain why an otherwise, young. Healthy 27-year-old who was initially approximately 180 lbs., was experiencing sudden malnutrition and dehydration;

e. Failure to properly perform a physical exam of Sarah's abdominal area upon her initial visits to the Naval Clinic which would be required to rule out other diagnoses other than heartburn;

f. Failure to perform a diagnostic endoscopy to confirm or rule out a medical diagnosis of heartburn or other issue with Sarah's gastrointestinal tract;

g. Failure to consider alternative diagnoses upon having knowledge that a) Nexium was not providing any relief; b) antibiotics were not providing her any relief, and c) Sarah Stone had a significant family history of cancer;

h. Collier PA-C failed to consult his superior attending physician about Sarah's complaints and obtain a more conclusive plan of medical management, diagnosis, and diagnostic testing modalities;

i. Failure to refer Sarah to a medical specialist experienced in the diagnosis and treatment of Sarah's abdominal pain, difficulty eating, and increasing bloating simultaneous with Sarah's increased weight loss.

j. Failure to take proper heed to Sarah's familial medical history when treating Sarah and formulating potential diagnoses.

     k. Failure to order abdominal ultrasound as stat instead of routine at Sarah's last visit with Collier PA-C.

73. Sarah Kay Stone, Plaintiff and Decedent, sustained needless pain and suffering, lack of appropriate and timely medical treatment, and loss of chance at survival based upon her true diagnosis of appendiceal cancer, as a result of the carelessness, ordinary and professional negligence of the agents and employees of the Defendant, The United States of America.

74. As a result of the carelessness, ordinary and professional negligence of the agents and employees of the Defendant, United States of America, as described herein, Plaintiff suffered pain, mental anguish, physical deformity, bodily injury, permanent disability, premature death, medical and hospital expenses, and continued to suffer the same until her untimely and premature death on or about November 01, 2016.

75. Defendants' proximately and legally caused Mrs. Stone's injuries for which she seeks compensation based upon their non-conformity to the recognized medical standard of care and professional negligence which includes delayed diagnosis and missed diagnosis.

**SECOND CAUSE OF ACTION: WRONGFUL DEATH OF SARAH KAY STONE**

**[Against all Defendants]**

76. Plaintiffs incorporate paragraphs 1 through 75 by reference, of this Complaint as though fully set forth herein.

77. Plaintiffs allege that Defendant(s) owed Plaintiff a duty of care in diagnosis and treatment that other reasonably careful health care professionals would use in same or similar circumstances. Health care professionals owe this legal duty whenever they undertake a patient for care and/or treatment.

78. Plaintiffs allege that Defendants breached their duty to the Plaintiffs by failing to properly and appropriately provide medical treatment, examination, and diagnosis to Sarah Kay Stone.

79. Defendants' breach thereby resulted in Mrs. Stone being deprived of valuable medical care and treatment that would/could have determined the source of Decedent's severe abdominal pain and severe bloating.

80. Defendants' breach of their legal duties as defined by the recognized patient/provider relationship which existed between Mrs. Stone and the Defendants resulted in a misdiagnosis and delayed diagnosis of Mrs. Stone's true medical condition thereby negating timely medical treatment for her appendiceal cancer and thus causing the appendiceal cancer to metastasize to Mrs. Stone's bones in which appropriate treatment for the appendiceal cancer could no longer be safely administered thereby causing Mrs. Stone's early demise on or about November 1, 2016.

81. Plaintiffs allege that Defendants breach of the duty owed to Mrs. Stone is the proximate and factual cause of Mrs. Sarah Kay Stone's death.

82. As a result of Defendants' breach of duty owed to Sarah Kay Stone, Plaintiffs' suffered special and general damages.

83. As a direct and proximate cause of the above described negligence, Plaintiffs, Jonathon E. Stone, individually and on behalf of Alyssa Stone, a minor; Allison Stone, a minor; Madelynn Stone, a minor; and Jackson E. Stone, a minor, allege that Plaintiffs have been deprived of their wife and mother's, respectively, financial support, services, love, companionship, comfort, affection, society, solace, guidance, and moral support of Sarah Kay Stone and have thereby sustained pecuniary loss for which they seek compensation in accordance with the Federal Torts Act and/or California Civil Code.

84. As a further and direct and proximate result of the above-described negligence, Jonathon E. Stone has incurred funeral expenses and related economic losses for which he seeks compensation in accordance with the Federal Torts Act and/or California Civil Code.

**THIRD CAUSE OF ACTION: LOSS OF CONSORTIUM**

**[Against all Defendants]**

85. Plaintiff incorporates by reference Paragraphs 1 through 84 of this Complaint as though fully set forth herein.

86. At all times, Jonathon Stone was the lawful spouse of Sarah Kay Stone.

87. Sarah Kay Stone was harmed by Defendants and suffered the damages described herein.

88. As a direct and proximate result of Defendants' acts, conduct, and failure to act, which caused Sarah Stone harm and damages, Jonathon Stone was deprived prior to his wife's death, and will continue, as a result of his wife's death, to be further deprived, of the love, companionship, comfort, care, assistance, protection, affection, society, and moral support each spouse gives the other through the triumph and despair of life, as well as the deprivation of a spouse's physical assistance in operating and maintaining the family home.

89. Plaintiff, Jonathon Stone seeks damages for loss of consortium that was a direct and proximate cause of Defendant's negligence in correctly diagnosing and medically treating his wife, Sarah Kay Stone, for appendiceal cancer.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants, the United States of America, and each of them, for all causes of action, as follows:

a) Damages in the amount of Twenty-Four Million Dollars [$24,000,000.00];

b) All costs, disbursements, attorney fees;

c) Post-judgement interest at the legal rate of 10 percent [10%] per annum from the date of judgement;

d) For such other and further relief to which the Plaintiffs are entitled and/or as the court may deem just, proper, and equitable.

Date: April 12, 2020

THE LAW OFFICE OF YVONNE M. FRASER

Signature: _____
Yvonne M. Fraser, Esq.
Attorney for Plaintiffs Stone et al